Gideon Kracov (State Bar No. 179815)
LAW OFFICE OF GIDEON KRACOV
801 S. Grand Avenue, 11th Floor
Los Angeles, CA 90017-4645
Tel: (213) 629-2 071
Fax: (213) 623-7755
Email: gk@gideonlaw.net

Arthur Pugsley (State Bar No. 252200)
Melissa Kelly (State Bar No. 300817)
LOS ANGELES WATERKEEPER
120 Broadway, Suite 105
Santa Monica, CA 90401
Tel: (310) 394-6162
Fax: (310) 394-6178
Email: arthur@lawaterkeeper.org
Email: melissa@lawaterkeeper.org

Attorneys for Plaintiff LOS ANGELES
WATERKEEPER

MICHAEL N. MILLS (State Bar No. 191762)
SHANNON L. MORRISSEY (State Bar No.
307144)
STOEL RIVES LLP
500 Capitol Mall, Suite 1600
Sacramento, CA 95814
Telephone: (916) 447-0700
Fax: (916) 447-4781
Email: michael.mills@stoel.com

Attorneys for Defendant
PRESS FORGE COMPANY

JS-6

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| LOS ANGELES WATERKEEPER, a non-profit corporation, | Case No.: 2:17-CV-02228-JFW (PLAx) |
|---|---|
| Plaintiff, | **CONSENT DECREE AND ORDER** |
| v. | |
| PRESS FORGE COMPANY, a corporation, and DOES 1 through 10, | **(Federal Water Pollution Control Act, 33 U.S.C. § 1251, _et seq._)** |
| Defendants. | |

**WHEREAS,** Los Angeles Waterkeeper ("Waterkeeper") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Santa Monica, California;

**WHEREAS,** Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS,** Defendant Press Forge Company ("Defendant" or "Press Forge") owns and operates a metal forging facility at 7700 Jackson Street in Paramount, California ("Facility");

**WHEREAS,** on January 19, 2017, Waterkeeper sent a sixty (60) day notice letter ("Notice Letter") to Press Forge, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board") and the Regional Water Quality Control Board ("Regional Board"), stating its intent to file suit for violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq.* ("CWA"). The Notice Letter alleged violations of the CWA for Defendant's alleged discharges of pollutants into storm drains and receiving waters from the Facility, including the Los Angeles River Estuary, the Los Angeles/Long Beach Harbor and the San Pedro Bay to the Pacific Ocean (collectively "Receiving Waters"), in violation of National Pollution Discharge Elimination System General Permit No. CAS000001 [State Board] Water Quality Order No. 97-03-DWQ ("1997 Permit"), as superseded by Order No. 2014-0057-DWQ ("2015 Permit"). The 1997 Permit and/or 2015 Permit may be referred to generically as the "Storm Water Permit";

**WHEREAS,** on March 22, 2017 Waterkeeper filed a complaint ("Complaint") against Press Forge in the United States District Court, Central District of California (Case No. 2:17-CV-02228-CAS (PLAx)), entitled *Los Angeles Waterkeeper v. Press Forge Company*;

**WHEREAS,** Press Forge denies all allegations of the Complaint;

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

[PROPOSED] CONSENT DECREE AND ORDER
95914579.1 0045631-00077

-2-

CASE NO.: 2:17-CV-02228-JFW (PLAX)

**WHEREAS,** Plaintiff and Defendant (collectively referred to herein as the "Settling Parties" or "Parties") agree that it is in the Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings; and

**WHEREAS,** all actions taken by Press Forge pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations;

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A);

2.      Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. §1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District;

3.      The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

4.      Waterkeeper has standing to bring this action; and

5.      The Court shall retain jurisdiction over this matter for purposes of interpreting, modifying or enforcing the terms of this Consent Decree, or as long as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I.     OBJECTIVES

6.      It is the express purpose of the Parties entering into this Consent Decree to further the objectives set forth in the CWA, 33 U.S.C. § 1251, *et seq.*, and to resolve those issues alleged by Waterkeeper in its Complaint.  In light of these objectives and as set forth fully below, Press Forge agrees, *inter alia*, to comply with the provisions of this Consent Decree, and to comply with the requirements of the Storm Water Permit and all applicable provisions of the

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

[PROPOSED] CONSENT DECREE AND ORDER

-3-

CASE NO.: 2:17-CV-02228-JFW (PLAX)

95914579.1 0045631-00077

CWA—specifically Receiving Water Limitations A, B and C at Section VI of the 2015 Permit, and Effluent Limitation A, at Section V of the 2015 Permit, which require, *inter alia*, that Press Forge develop and implement Best Management Practices ("BMPs") designed to achieve Best Available Technology ("BAT") and Best Conventional Pollutant Control Technology ("BCT") at the Facility. Press Forge shall develop and implement BMPs at the Facility necessary to comply with the 2015 Permit (or subsequently adopted Storm Water Permit) requirement to achieve compliance with BAT/BCT standards and to not cause or contribute to exceedances of applicable Water Quality Standards including, *inter alia*, standards outlined in the "Water Quality Control Plan—Los Angeles Region: Basin Plan for Coastal Watersheds of Los Angeles and Ventura County" and those contained in 40 C.F.R. § 131.38 ("California Toxics Rule" ("CTR")). BMPs must be developed and implemented to prevent discharges or to reduce contamination in stormwater discharged from the Facility sufficient to achieve the numeric objectives detailed in Table 1 of this Consent Decree in accordance with the provisions of this Consent Decree.

7.     The term "Effective Date," as used in this Consent Decree, shall mean the last day for the United States Department of Justice and the EPA (collectively "Federal Agencies") to comment on the Consent Decree, i.e., the 45th day following the Federal Agencies' receipt of the Consent Decree, or the date on which the Federal Agencies provide notice that they require no further review, and the Court enters the final Consent Decree.

8.     This Consent Decree will terminate on its own terms three (3) years from the Effective Date, unless there is a prior ongoing, unresolved dispute regarding Press Forge's compliance with its terms. Should there be such a dispute, Waterkeeper shall file a Notice of Dispute with the Court prior to the Termination Date, which shall identify the issue in dispute. The filing of such a Notice of Dispute shall extend the Termination Date until the Court determines the dispute

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

[PROPOSED] CONSENT DECREE AND ORDER

-4-

CASE NO.: 2:17-CV-02228-JFW (PLAX)

95914579.1 0045631-00077

has been resolved and thereupon dismisses the case, or, alternatively, if the Settling Parties file a stipulation for dismissal.

## II.   COMMITMENTS OF THE PARTIES

### A.   Industrial Storm Water Pollution Control Measures

9.     To ensure there are no unauthorized non-stormwater discharges, any non-stormwater discharges from the Facility not authorized by the Storm Water Permit shall be considered a breach of this Consent Decree.

10.     All stormwater pollution measures required by this Consent Decree will be implemented at the Facility. Any disputes over the adequacy and/or timing of the implementation of BMPs shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

11.     <u>BMP Plan</u>. Press Forge has or will implement the following additional BMPs at the Facility, in the locations depicted in the Site Maps attached as Exhibit A and within 30 days after the Effective Date unless otherwise stated:

a.     <u>Repair damaged concrete</u>.  During the monthly inspection required by Section XI of the 2015 Permit, Press Forge will identify significantly pitted or otherwise significantly damaged concrete surfaces in need of repair to minimize stormwater pollutants.  Press Forge will repair any identified surface within 60 days of a monthly inspection that identifies a need for repair.

b.     <u>Maintain secondary containment for mop water</u>.  Press Forge will store "mop water" in a double-walled tank or provide substantially equivalent measures so as to prevent it from coming into contact with stormwater.

c.     <u>Evaluate berms for cooling rack areas</u>.  Press Forge will evaluate the feasibility and effectiveness of enclosing outdoor cooling rack areas within a berm to contain particulate matter and facilitate cleaning.  By 30 days after the Effective Date, Press Forge will notify Waterkeeper of the results of the evaluation.

Stoel Rives LLP
Attorneys At Law
San Francisco

[PROPOSED] CONSENT DECREE AND ORDER
95914579.1 0045631-00077

-5-

CASE NO.: 2:17-CV-02228-JFW (PLAX)

d. <u>Cover material and equipment stored outside in Area 4</u>. Press Forge will cover, through canopies, tarps or other means, material and equipment stored outside in Area 4 when the material and equipment are not in use.

e. <u>Cover bins and other containers used to store materials for disposal or recycling</u>. Press Forge will keep bins and other containers used for these purposes under cover or covered with a temporary lid, tarp or other cover when not in use.

f. <u>Potential additional Area 4 stormwater discharge</u>. Press Forge will add a berm sufficient to prevent stormwater discharges from occurring in the northwest corner of Area 4.

g. <u>Evaluate potential additional Area 5 stormwater discharge</u>. Press Forge will evaluate stormwater discharges from the west side of Area 5 by monitoring and contemporaneously documenting stormwater flows in that area during the first qualified stormwater discharge from the Facility after the Effective Date of this Consent Decree. Press Forge shall provide such documentation to Waterkeeper, upon request, within fifteen (15) days of receipt of the request. If stormwater discharges off site at this location, Press Forge will install sandbags or take other temporary measures to eliminate the discharge so long as Press Forge continues to lease Area 5.

h. <u>Cover drain inlets</u>. Press Forge will cover all drain inlets, other than the inlet that serves Area 3, when rain is not forecast within the next 72 hours.

i. <u>Downspouts</u>. Press Forge will install 4-inch Model No. FG-DS4 FloGard Downspout Filters or downspout filters of comparable performance on all external downspouts within 30 days after the Effective Date.

j. <u>New grinding building</u>. In order to better prevent metal and particulates from coming into contact with stormwater, and subject to obtaining all necessary governmental approvals, Press Forge will construct a new building to house hand and swing grinding operations within six months of obtaining the final

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

[PROPOSED] CONSENT DECREE AND ORDER
95914579.1 0045631-00077

-6-

CASE NO.: 2:17-CV-02228-JFW (PLAX)

approval necessary to construct and operate the building.  In accordance with South Coast Air Quality Management District Rule 1430 ("Rule 1430"), as adopted on March 3, 2017, Press Forge will install plastic strip curtains or any equivalent alternative allowed by the rule on each of the doorways of the new grinding building.  Press Forge will update its Stormwater Pollution Prevention Plan to reflect the new building within thirty (30) days after it becomes operational.  In addition and as necessary, Press Forge will upgrade its existing buildings containing billet grinding operations in accordance with Rule 1430.

**B.     Monitoring and Reporting Program ("M&RP")**

12.     <u>Sample Frequency</u>.  Press Forge shall collect stormwater samples in the event that discharges occur at the Facility from at least two (2) storm events in the first half of the Wet Season (July 1 through December 31) and two (2) storm events in the second half of the Wet Season (January 1 through June 30) in accordance with the 2015 Permit.  Any failure to sample a qualified discharge from each discharge location at the Facility until two (2) storm events per each half of the Wet Season have been sampled shall be documented and submitted to Waterkeeper within fifteen (15) days after each half of the Wet Season (i.e., by January 15 and July 15).

13.     <u>Sample Analysis</u>.  Press Forge shall analyze samples collected in accordance with the Permit for Total Suspended Solids, pH, Oil & Grease, Zinc, Nitrate + Nitrite Nitrogen, Aluminum, and Iron.  For the duration of the Consent Decree Press Forge shall also analyze the samples collected above for Chemical Oxygen Demand, Copper (dissolved), and Chromium (hexavalent).  Press Forge shall select laboratories and analytical limits such that, at a minimum, the method detection limits are below the numeric objectives in Table 1.  For the analysis of dissolved Copper, Press Forge shall use EPA Method 200.8.

Stoel Rives LLP
Attorneys At Law
San Francisco

[PROPOSED] CONSENT DECREE AND ORDER
95914579.1 0045631-00077

-7-

CASE NO.: 2:17-CV-02228-JFW (PLAX)

14. <u>Sampling Locations</u>. Press Forge shall collect storm water samples from each of the following outfall locations at the Facility as depicted in Exhibit A hereto: Outfalls 1, 2, 2a, 3, 4 and 5.

15. <u>Written Report</u>. Press Forge shall submit a written report to Waterkeeper at the end of each Wet Season listing all storm events that occurred and resulted in a sampled discharge at any of the Facility's' stormwater outfalls. The report shall be submitted on or before July 30 every year during the term of this Consent Decree and must include a table summarizing analytical results from the Facility's storm water samples and comparing those results to the numeric objectives in Table 1.

16. <u>Revising the M&RP.</u> Within thirty (30) calendar days of the Effective Date of this Consent Decree, Press Forge shall revise its M&RP for the Facility to incorporate any additional monitoring and reporting requirements associated with this Consent Decree, other than the additional monitoring and reporting requirements for chemical oxygen demand, dissolved copper and hexavalent chromium, and other than any numeric objective that is less than the comparable numeric action level in the 2015 Permit. Press Forge shall submit the revised M&RP to Waterkeeper for review and comment as soon as it is completed but in any event no later than 30 calendar days of the Effective Date.

a. Waterkeeper shall provide comments, if any, to Press Forge within 30 calendar days of receipt of the revised M&RP with respect to any inconsistency with the monitoring and reporting requirements of the Consent Decree, other than the additional monitoring and reporting requirements for chemical oxygen demand, dissolved copper and hexavalent chromium, and other than any numeric objective that is less than the comparable numeric action level in the 2015 Permit. Press Forge shall incorporate Plaintiff's comments into the M&RP, or shall justify in writing why any comment is not incorporated within thirty (30) calendar days of receiving comments. Any disputes over the consistency

Stoel Rives LLP
Attorneys At Law
San Francisco

[PROPOSED] CONSENT DECREE AND ORDER

-8-

CASE NO.: 2:17-CV-02228-JFW (PLAX)

95914579.1 0045631-00077

1  of the revised M&RP with this paragraph 16 shall be resolved pursuant to the

2  dispute resolution provisions of this Consent Decree, set out in Section III below.

3      b.      Press Forge shall revise the Facility's M&RP if there are any

4  material changes in the Facility's operations that would require such revisions

5  pursuant to the Storm Water Permit, including, but not limited to, changes to

6  stormwater discharge points. Press Forge shall revise the M&RP within thirty (30)

7  days of the changes and submit the revised M&RP to Waterkeeper for review as

8  provided in paragraph 16.a., above.

9      **C.      Numeric Objectives**

10     17.    Numeric Objectives for Storm Water Discharges.  If any contaminant

11  in a storm water discharge from any discharge point at the Facility exceeds the

12  numeric objectives ("Numeric Objectives") in Table 1, Press Forge shall respond to

13  the exceedance as required by this Consent Decree.

14  **Table 1. Numeric Objectives**

| Contaminant | Numeric Objective |
|---|---|
| Total Suspended Solids | 100 mg/L |
| pH | 6.5 – 8.5 |
| Chemical Oxygen Demand (COD) | 120 mg/L |
| Oil and Grease | 15 mg/L |
| Nitrate + Nitrite Nitrogen | 0.68 mg/L |
| Zinc | 0.12 mg/L* |
| Aluminum | 0.75 mg/L |
| Iron | 1.0 mg/L |
| Chromium (hexavalent) | 0.05 mg/L |

* Denotes an objective derived from the  CTR.  Compliance with CTR-based Numeric Objectives for metals will be based on an evaluation of dissolved concentrations only.

24     18.    Action Plan for Table 1 Exceedances during the Consent Decree. In

25  any Wet Season during which analyses of a stormwater sample demonstrate an

26  exceedance of the parameters detailed in Table 1 more than once at any single

27  outfall, Press Forge shall prepare and submit a plan for achieving the Numeric

28  Objectives for those parameters at outfalls at which the parameters were exceeded

more than once ("Action Plan") to Waterkeeper by July 1[1] following the Wet Season in which the exceedances giving rise to the obligation to submit an Action Plan occurred. In addition, by July 1, 2018, Press Forge will submit to Waterkeeper a report evaluating the potential sources of any dissolved Copper in its discharges. Beginning in 2019, if an Action Plan is required pursuant to this paragraph, Press Forge will also submit a report evaluating the potential sources of dissolved Copper in its discharges.

19. <u>Action Plan Requirements</u>. Each Action Plan submitted shall be in writing and shall include, at a minimum: (1) the identification of the pollutant(s) exceeding Table 1's Numeric Objectives, (2) an assessment of the source of each exceedance, (3) the identification of additional BMPs, including treatment as necessary and appropriate, that will be implemented to achieve the Numeric Objectives, and (4) time schedules for implementing proposed BMPs, which shall not exceed October 1[2] of the Wet Season following the Wet Season in which the exceedances that gave rise to the Action Plan occurred unless the Action Plan provides for a later deadline for a specific action. As an alternative means of complying with the Numeric Objectives, Press Forge may meet the requirements of this Consent Decree by demonstrating that the mass load of the pollutant has been reduced through a combination of decreases in pollutant discharge concentrations and reductions of the volume of the runoff discharged from the industrial areas of the Facility, such that the mass discharge equivalent of the Table 1 Numeric Objective is achieved. For purposes of evaluating compliance with this alternative compliance mechanism, the mass discharge equivalents of the Table 1 numeric objectives are the masses of the Table 1 pollutants discharged at the Table 1

---

[1] If the Action Plan requirement is triggered by an exceedance that occurs less than thirty (30) days prior to July 1, the Action Plan shall be submitted thirty (30) days from the date of the exceedance triggering the Action Plan requirement.
[2] If the Action Plan was submitted after July 1 pursuant to paragraph 18, Press Forge shall have until November 1 to implement the Action Plan.

concentrations during a design storm of 0.9 inches in 24 hours as the Facility existed on July 1, 2015. Exhibit B sets forth calculations of the mass discharge equivalents for the Table 1 objectives during the design storm as the Facility existed on July 1, 2015 (the "Baseline Mass Discharge"). Press Forge may demonstrate that it has met or will meet the Baseline Mass Discharge by multiplying the discharge concentration of the pollutant by the discharge flow from the Facility as it exists at the time of the discharge during a design storm of 0.9 inches in 24 hours. If Press Forge proposes to achieve the Table 1 Numeric Objectives through achieving the Baseline Mass Discharge, the implemented or proposed mass load reduction measures, together with the mass load reduction modeling demonstration required by this paragraph, shall be included in the Action Plan. The Action Plan will include either a modeling demonstration that Press Forge has achieved the mass equivalent of the Table 1 Numeric Objective, or specific proposed measures (such as infiltration) that the modeling demonstration shows achieve the mass equivalent and a schedule for implementing those measures. The Action Plan shall be prepared and stamped by a professional engineer.[3]

20. **Action Plan Review.** Waterkeeper shall have 30 days upon receipt of Press Forge's Action Plan or Copper evaluation report to provide Press Forge with comments. Within 30 days from the date Waterkeeper comments on Press Forge's Action Plan, Press Forge shall provide Waterkeeper with a written explanation if Press Forge refuses to develop and/or implement any of Waterkeeper's recommended additional BMPs. Any disputes as to the adequacy of the Action Plan

---

[3] For example, as shown in Exhibit B, the total discharge flow from the Facility as it existed on July 1, 2015 during a design storm of 0.9 inches in 24 hours is 201,803 gallons. At the Table 1 TSS Numeric Objective of 100 mg/L, this discharge flow results in a Table 1 TSS mass discharge equivalent of 168.24 pounds (the Baseline Mass Discharge). If through infiltration or other means, modeling shows that the future discharge flow from the Facility during a design storm of 0.9 inches in 24 hours were reduced to 100,000 gallons, and the future TSS discharge concentration were 110 mg/L, the TSS mass discharged during the design storm would be 91.7 pounds, which would meet the alternative mass equivalent of the Table 1 TSS Numeric Objective.

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

[PROPOSED] CONSENT DECREE AND ORDER

-11-

CASE NO.: 2:17-CV-02228-JFW (PLAX)

95914579.1 0045631-00077

or Copper evaluation report shall be resolved pursuant to the dispute resolution provisions set out in Section III below.

21.    Press Forge shall have until October 1[4] following the Wet Season in which the exceedances giving rise to the obligation to submit an Action Plan occurred to implement the Action Plan unless the Action Plan provides a longer schedule for any specific action. Press Forge shall notify Waterkeeper in writing when the Action Plan has been implemented.

22.    If any structural BMPs require any government agency approval, then Press Forge shall exercise diligent efforts in obtaining such approval. Press Forge may contact Waterkeeper to request an extension of the deadline in paragraph 21, if necessary, to implement the structural BMPs requiring agency approval. Waterkeeper shall not unreasonably withhold consent to an extension request.  In no event, however, shall Press Forge be held to have violated paragraph 21 if the delay is caused solely by the delay in obtaining government agency approval and Press Forge has exercised diligent efforts to obtain such approval.

**D.    Storm Water Pollution Prevention Plan ("SWPPP")**

23.    <u>SWPPP Revisions.</u>  Within thirty (30) calendar days of the Effective Date of this Consent Decree, Press Forge shall revise the SWPPP to identify (1) current BMPs and (2) BMPs developed pursuant to this Consent Decree to control the discharge of pollutants from the Facility as described in paragraph 11. Press Forge shall submit the revised SWPPP to Waterkeeper for review and comment as soon as it is completed, but in any event no later than thirty (30) calendar days of the Effective Date.

a.    Waterkeeper shall provide comments, if any, to Press Forge within thirty (30) calendar days of receipt of the SWPPP. Press Forge shall incorporate Plaintiff's comments into the SWPPP, or justify in writing why any

---

[4] If the Action Plan was submitted after July 1 pursuant to paragraph 18, Press Forge shall have until November 1 to implement the Action Plan.

comment is not incorporated within thirty (30) calendar days of receiving comments. Any disputes as to the adequacy of the revised SWPPP shall be resolved pursuant to the dispute resolution provisions set out in Section III of this Consent Decree.

b.      Press Forge shall revise the SWPPP if there are any material changes in the Facility's operations, including, but not limited to, changes to stormwater discharge points or BMPs. Press Forge shall revise the SWPPP within thirty (30) days of the changes and submit the revised SWPPP to Waterkeeper for review and comment as provided in paragraph 23.a., above.

**E.      Employee Training**

24.      Within thirty (30) calendar days of the Effective Date, Press Forge shall develop a formal training program, including any training materials, as necessary, for effective implementation of the training program ("Training Program").

25.      The Training Program shall ensure (a) that there are a sufficient number of employees delegated to achieve compliance with the Storm Water Permit and this Consent Decree, and (b) that these employees are properly trained to perform the required compliance activities. Such Training Program shall be specified in the SWPPP.

26.      The Training Program shall require specific training to include at least the following:

a.      <u>Non-Storm Water Discharge Training.</u>  Press Forge shall train all employees about  the Storm Water Permit's prohibition of unauthorized non-stormwater discharges so that employees know what unauthorized non-stormwater discharges are, how to detect them and how to prevent them.

b.      <u>BMP Training</u>. Press Forge shall train all employees responsible for BMP implementation and maintenance to ensure that BMPs are used effectively to prevent the exposure, discharge and/or treatment of stormwater at the Facility.

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

[PROPOSED] CONSENT DECREE AND ORDER

-13-

CASE NO.: 2:17-CV-02228-JFW (PLAX)

95914579.1 0045631-00077

c. <u>Sampling Training</u>. Press Forge shall train all individuals collecting samples at the Facility pursuant to this Consent Decree or the Storm Water Permit on the proper sampling protocols, including chain of custody requirements, to ensure stormwater and/or non-storm water samples are properly collected, stored and submitted to a certified laboratory.

d. <u>Visual Observation Training.</u> Press Forge shall provide training to all individuals performing visual observations at the Facility pursuant to this Consent Decree and the Storm Water Permit.

27. Training shall be provided by a private consultant or a representative of Press Forge familiar with the requirements of this Consent Decree and the Storm Water Permit, and shall be repeated as necessary to ensure that all such employees are familiar with the requirements of this Consent Decree, the Storm Water Permit and the Facility's SWPPP. All new staff shall receive this training before assuming responsibilities for implementing the SWPPP or the M&RP.

28. Press Forge shall maintain training records to document compliance with this paragraph, and shall provide Waterkeeper with a copy of these records within fourteen (14) days of receipt of a written request.

**F. Compliance Monitoring and Reporting**

29. <u>Site Inspections.</u> Up to three Waterkeeper representatives or consultants (including an attorney) may conduct up to one physical inspection per Reporting Year[5] ("Site Inspection") and one additional inspection during the first Reporting Year this Consent Decree is in effect. Site Inspections shall occur during normal business hours and Waterkeeper shall provide Press Forge with as much notice as possible, but at least twenty-four (24) hours' notice prior to a Site Inspection in anticipation of wet weather, and seventy-two (72) hours' notice during dry weather. Notice will be provided by telephone and electronic mail.

---

[5] The Reporting Year is July 1 through June 30.

During the Site Inspection, Press Forge shall allow Waterkeeper and/or its representatives access to the Facility's SWPPP, M&RP, any and all stormwater monitoring records, and to reports and data related to stormwater monitoring at the Facility. During the Site Inspection, Press Forge shall allow Waterkeeper and/or its representatives to collect samples of stormwater or non-stormwater discharges, provided that Waterkeeper shall provide split samples to Press Forge at the time of collection. Waterkeeper will provide a copy of all analytical results from the samples, including laboratory reports, to Press Forge within seven (7) days of receiving the results. Payment for laboratory results for such split samples shall be the sole responsibility of Press Forge. Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection unless the photographs or video would show proprietary or confidential information. Waterkeeper shall obtain prior confirmation from Press Forge that a photograph or video will not show proprietary or confidential information before taking a photograph or video recording. If Waterkeeper takes photographs and/or video recording, Waterkeeper shall provide Defendant with the photographs and/or video within fourteen (14) calendar days after the Site Inspection. Waterkeeper agrees that all individuals participating in a Site Inspection will execute, as necessary, waivers, releases and similar agreements.

30. <u>Waterkeeper's Compliance Monitoring</u>. Press Forge shall pay a total of fifteen-thousand ($15,000) dollars ($) to compensate Waterkeeper for costs and fees to be incurred for monitoring Press Forge's compliance with this Consent Decree. Payment shall be received within fifteen (15) days of the Effective Date payable to "Los Angeles Waterkeeper" and addressed to: Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, California 90401, and sent via courier or overnight delivery. Failure to submit payment as required under this paragraph will constitute a breach of the Consent Decree.

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

[PROPOSED] CONSENT DECREE AND ORDER
95914579.1 0045631-00077

-15-

CASE NO.: 2:17-CV-02228-JFW (PLAX)

31.     <u>Action Plan Payments</u>. Press Forge shall pay three thousand, five hundred dollars ($3,500) each year an Action Plan is submitted to Waterkeeper. If the Action Plan is based in whole or in part on achieving the mass discharge equivalent of a Table 1 Numeric Objective, the payment for that Action Plan shall be four thousand, five hundred dollars ($4,500).  Payments shall be made at the time the Action Plan is submitted and payable to "Los Angeles Waterkeeper" and addressed to: Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, California 90401, and sent via courier or overnight delivery. Failure to submit a payment as required under this paragraph will constitute a breach of the Consent Decree.

32.     <u>Data Reporting</u>.  During the life of this Consent Decree, Press Forge shall provide Waterkeeper with a copy of all Consent Decree and Permit compliance and monitoring data, including inspection reports, related to the Facility's coverage under the Storm Water Permit on a semi-annual basis, on January 15 and July 15 for the preceding half year.

33.     <u>Document Provision</u>.  During the life of this Consent Decree, Press Forge shall copy Waterkeeper on all documents and communications related to stormwater quality at the Facility that are submitted to the Regional Board, the State Board, and/or any State or local agency, county, or municipality.  Such reports and documents shall be provided to Waterkeeper concurrently as they are sent to the agencies and/or municipalities. Any correspondence related to stormwater quality received from any regulatory agency, State or local agency, county, or municipality shall be provided to Waterkeeper within fifteen (15) business days of receipt by Press Forge.  Press Forge shall provide Waterkeeper with all laboratory analyses related to sampling at the Facility within seven (7) days of Press Forge's receipt of such information.

### G. Environmental Project, Reimbursement of Litigation Fees and Costs, and Stipulated Penalties

34.    Environmental Project. Press Forge agrees to make a payment of seventy-five thousand dollars ($75,000) to be received within fifteen (15) calendar days of the Effective Date to The Rose Foundation for a project related to water quality designed to analyze, reduce, prevent, or otherwise mitigate the ecological and/or public health effects of stormwater and/or non-stormwater discharges into Los Angeles area waterbodies.  The payment shall be mailed via certified mail or overnight delivery to the attention of Tim Little, Rose Foundation for Communities and the Environment, Attn: LA Waterkeeper v. Press Forge Company at 1970 Broadway, Suite 600, Oakland, California 94612-2218.  Press Forge shall provide Waterkeeper with a copy of such payment.

35.    Reimbursement of Plaintiffs' Fees and Costs. Press Forge agrees to partially reimburse Plaintiff for its investigation fees and costs, consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter in an amount totaling eighty three thousand five hundred dollars ($83,500).  All such payments shall be received within fifteen (15) calendar days of the Effective Date and made payable to Law Office of Gideon Kracov and delivered by certified mail or overnight delivery at 801 S. Grand Ave., 11th Floor, Los Angeles, California 90017.

36.    Stipulated Payment. Press Forge shall make a remediation payment of six-hundred dollars ($600) for each deadline included in this Consent Decree that is missed by more than seven (7) days.  Payments for a missed deadline shall be made for the restoration and/or improvement of the watershed in the area affected by Press Forge's alleged discharges and shall be awarded to The Rose Foundation, and mailed via certified mail or overnight delivery to the attention of Tim Little per the terms described above in paragraph 35. Press Forge agrees to make the stipulated

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

[PROPOSED] CONSENT DECREE AND ORDER
-17-
CASE NO.: 2:17-CV-02228-JFW (PLAX)

95914579.1 0045631-00077

payment within thirty (30) days of notice from Waterkeeper of a missed deadline and make the payment via overnight delivery or by certified mail. Press Forge shall provide Waterkeeper with a copy of each such payment at the time it is made.

### H. Agency Review of Consent Decree

37. Plaintiff shall submit this Consent Decree to the Federal Agencies, within three (3) business days of the final signature of the Parties, for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to Press Forge. In the event that the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies.

## III. DISPUTE RESOLUTION

38. This Court shall retain jurisdiction over this matter for the purposes of adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

39. <u>Meet and Confer</u>. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution under this Section. The Parties shall then meet and confer in an attempt to resolve the dispute no later than fourteen (14) calendar days from the date of the notice.

40. If the Parties cannot resolve the dispute within 14 days after the meet and confer described in paragraph 39, the Parties agree to request a settlement meeting before the Judge assigned to this action. In the event that the Parties cannot resolve the dispute by the conclusion of the settlement meeting with the Judge, the Parties agree to submit the dispute via motion to the District Court.

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

[PROPOSED] CONSENT DECREE AND ORDER
95914579.1 0045631-00077

-18-

CASE NO.: 2:17-CV-02228-JFW (PLAX)

41. In resolving any dispute arising from this Consent Decree, the Court shall have discretion to award attorneys' fees and costs to either party. The relevant portions of the then-applicable CWA and Rule 11 of the Federal Rules of Civil Procedure and applicable case law interpreting such provisions shall govern the allocation of fees and costs in connection with the resolution of any disputes before the District Court. Plaintiff and Defendant agree to file any waivers necessary for the Judge to preside over any settlement conference and motion practice.

## IV. MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

42. In consideration of the above, upon the Effective Date of this Consent Decree, the Parties hereby fully release, except for claims for Defendant's failure to comply with this Consent Decree and as expressly provided below, each other and their respective successors, assigns, officers, agents, employees, and all persons, firms and corporations having an interest in them, from any and all alleged CWA violations claimed in the Complaint, up to and including the Termination Date of this Consent Decree.

43. Nothing in this Consent Decree limits or otherwise affects Plaintiff's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the Regional Board, EPA, or any other judicial or administrative body on any other matter relating to Defendant.

44. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

45. <u>Force Majeure</u>. Press Forge shall notify Waterkeeper, pursuant to the terms of this paragraph, when timely implementation of the requirements set forth

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

[PROPOSED] CONSENT DECREE AND ORDER

-19-

CASE NO.: 2:17-CV-02228-JFW (PLAX)

95914579.1 0045631-00077

in this Consent Decree becomes impossible, despite the timely good-faith efforts of Press Forge, due to circumstances beyond the reasonable control of Press Forge or its agents, and which could not have been reasonably foreseen and prevented by the exercise of due diligence by Press Forge. Any delays due to Press Forge's failure to make timely and bona fide applications and to exercise diligent efforts to obtain necessary permits, or due to normal inclement weather, shall not, in any event, be considered to be circumstances beyond Press Forge's control. In no circumstances shall a claim of inability to pay be considered Force Majeure.

a. If Press Forge claims impossibility, it shall notify Waterkeeper in writing within twenty-one (21) calendar days of the date that Press Forge first knew of the event or circumstance that caused or would cause a violation of this Consent Decree. The notice shall describe the reason for the nonperformance and specifically refer to this Section. It shall describe: i) the anticipated length of time the delay may persist; ii) the cause or causes of the delay; iii) the measures taken or to be taken by Press Forge to prevent or minimize the delay; iv) the schedule by which the measures will be implemented; and v) the anticipated date of compliance. Press Forge shall adopt all reasonable measures to avoid and minimize such delays.

b. The Parties shall meet and confer in good faith concerning the non-performance and, where the Parties concur that performance was or is impossible, despite the timely good faith efforts of Press Forge, due to circumstances beyond the control of Press Forge that could not have been reasonably foreseen and prevented by the exercise of due diligence by Press Forge, new deadlines shall be established.

c. If Waterkeeper disagrees with Press Forge's notice, or in the event that the Parties cannot timely agree on the terms of new performance deadlines or requirements, either party shall have the right to invoke the Dispute Resolution Procedure pursuant to Section III. In such proceeding, Press Forge shall bear the burden of proving that any delay in performance of any requirement of this

Stoel Rives LLP
Attorneys At Law
San Francisco

[PROPOSED] CONSENT DECREE AND ORDER

-20-

CASE NO.: 2:17-CV-02228-JFW (PLAX)

95914579.1 0045631-00077

Consent Decree was caused or will be caused by force majeure and the extent of any delay attributable to such circumstances.

## V.    MISCELLANEOUS PROVISIONS

46.    <u>Construction</u>.  The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the CWA, or specifically herein.

47.    <u>Choice of Law</u>.  The laws of the United States shall govern this Consent Decree.

48.    <u>Severability</u>.  In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

49.    <u>Correspondence</u>.  All notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by regular mail or electronic mail as follows:

| | |
|---|---|
| If to Plaintiff: | Arthur Pugsley<br>Melissa Kelly<br>Staff Attorney<br>Los Angeles Waterkeeper<br>120 Broadway, Suite 105<br>Santa Monica, CA 90401<br>arthur@lawaterkeeper.org<br>melissa@lawaterkeeper.org |
| With copies to: | Bruce Reznik<br>Executive Director<br>Los Angeles Waterkeeper<br>bruce@lawaterkeeper.org |
| If to Defendant: | Kyle Nelson<br>EH&S Manager<br>Press Forge Company<br>7700 Jackson Street<br>Paramount, CA  90723<br>knelson@pressforge.com |

Stoel Rives LLP
Attorneys At Law
San Francisco

[PROPOSED] CONSENT DECREE AND ORDER

-21-

CASE NO.: 2:17-CV-02228-JFW (PLAX)

95914579.1 0045631-00077

With copies to:

Robert Ortiz
General Manager
Press Forge Company
7700 Jackson Street
Paramount, CA 90723
robert.ortiz@pressforge.com

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

50. <u>Effect of Consent Decree</u>. Plaintiff does not, by its consent to this Consent Decree, warrant or aver in any manner that Defendant's compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of Defendant to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

51. <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

52. <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties.

53. <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

54. <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

[PROPOSED] CONSENT DECREE AND ORDER
95914579.1 0045631-00077

-22-

CASE NO.: 2:17-CV-02228-JFW (PLAX)

written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

55. <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter into the terms and conditions of this Consent Decree.

56. The provisions of this Consent Decree apply to and bind the Parties, including any successors or assigns. The Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Parties, and to legally bind the Parties to its terms.

57. The Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms. By entering into this Consent Decree, Defendant does not admit liability for any purpose as to any allegation or matter arising out of this Action.

IN WITNESS WHEREOF, the undersigned have executed this [Proposed] Consent Decree as of the date set forth below.

LOS ANGELES WATERKEEPER

Dated: February 13 , 2018    By: _____
                                 Melissa Kelly
                                 Attorney for Plaintiff
                                 LA Waterkeeper

LOS ANGELES WATERKEEPER

Dated: February 13 , 2018    By: _____
                                 Bruce Reznik
                                 Executive Director
                                 LA Waterkeeper

Stoel Rives LLP
Attorneys At Law
San Francisco

[PROPOSED] CONSENT DECREE AND ORDER
95914579.1 0045631-00077

-23-

CASE NO.: 2:17-CV-02228-JFW (PLAX)

STOEL RIVES LLP

Dated: _February 14_, 2018     By: _Michael Mills_ (signature)

Michael Mills
Attorneys for Defendant
Press Forge Company

PRESS FORGE COMPANY

Dated: _____, 2018     By: _____

Robert Ortiz
General Manager
Press Forge Company

**IT IS SO ORDERED:**

Date:_____

_____
Honorable John F. Walter
DISTRICT COURT JUDGE
CENTRAL DISTRICT OF CALIFORNIA

STOEL RIVES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

[PROPOSED] CONSENT DECREE AND
ORDER
95914579.1 0045631-00077

-24-

CASE NO.: 2:17-CV-02228-JFW (PLAX)

STOEL RIVES LLP

Dated: _____, 2018    By: _____
                                    Michael Mills
                                    Attorneys for Defendant
                                    Press Forge Company

PRESS FORGE COMPANY

Dated: FEBRUARY 17 , 2018    By: _____
                                 Robert Ortiz
                                 General Manager
                                 Press Forge Company

**IT IS SO ORDERED:**

Date: April 18, 2018    _____
                        Honorable John F. Walter
                        DISTRICT COURT JUDGE
                        CENTRAL DISTRICT OF CALIFORNIA



# EXHIBIT A



**2**

**1**

**B**

NORTH →

City Stormdrain

Outfall 1 , gate capture device and sampling point

Mop Water Storage

Illinois Avenue

Red Rinse Water Storage

Cooling tower

Office

Grinder

Flow

Main Building/Forge

Cooling Area
Quench Tank

Quench Tank

Flow

Area 2

Grinder

Flow

Flow

Bag House

Hazmat Storage

Grinders

**A**

Notes:
- Potential erodible surface shown as the cooling tower area.
- All concrete hatch is working industrial area
- There are no nearby bodies of water
- All water flows to capture device at gate
- The facility boundry is outer rectangle
- There have been no signifcint leaks or spills
- There is no run on onto Drainage Area 1

TITLE:

Press Forge SWPPP Map

Area 1

REV

Scale 1": 70' | SHEET 1 OF 1

**2**

**1**



Drainage Area 2 is approx 230'W x 250'L

NORTH ➡

B

sampling point

Municipal drain

Stormwater flow ⬅

Main Gate

Illinois Ave

Jackson Gate

sampling point

Guest Parking

Flow

Access to area 3

**Area 1**

**AREA 2**

**AREA 2A**

**Area 3**

Loading & Unloading

Loading & Unloading

Flow

Flow

Flow

Parts Storage

Flow

Parts Storage

Access to drainage area 1

Parts Storage

Parts Storage

Notes:
- This discharge area is delinated by outer rectangle
- Dashed center line divides Outfall 2 & 2A
- Erodible surfaces are covered in brick and gravel. Marked on plan as parts storage with brick hatchmarks
- There are no bodies of water nearby
- All industrial activity is limited to concrete hatch
- All stormwater flow drains to gate capture devices
- There have been no significant spills or leaks
- There is no run on from outside of drainage area

TITLE:

Press Forge SWPPP Map

DWG. NO.

REV

Area 2/2a

6-22-16

Scale 1":49'

SHEET 1 OF 1

Drainage area dimensions are approx 332' x 230'

North →



Quality Control check Area

Truck Entrance

sampling location

**Area 2a**

**Area 3**

Forge Building

**Area 4**

Flow

Stormwater swale

Outdoor
Parts Storage

Flow

Pass through to Area 4

Flow

Stormwater swale

Parts cooling area

Quench Tanks

Oxidation Coating Area

Notes:
- There are no water bodies nearby
- All areas marked as concrete hatch are industrial areas
- All stormwater flows towards south (left) and then towrds West (up)
- All flows are through engineered gate capture device
- There are no erodible surfaces
- There is no run on
- Facility boundaries are outer lines
- There have been no significant spills

| | |
|---|---|
| TITLE: | |
| **Press Forge Industrial Stormwater Map** | |

| SIZE | DWG. NO. | REV |
|---|---|---|
| **A** | Area 3 | 6-22-16 |
| | SCALE: 1":100' | SHEET 1 OF 1 |



**North**

Dirt area

Parts Storage

Parts Storage

Sampling point

Entrance

Drain

Forge Building

Flow

Flow

Flow

Flow

Parts Storage

Parts Storage

Cooling Area
Quench Tank

Diesel Tank

Ceramic Coating Area

To AREA 3

Notes:

- There are no bodies of water nearby
- All concrete areas are industrial areas
- Most traffic comes from Area 3
- There is a small non-industrial unpaved area to the west. this is not a significant source of erosion
- All water flows to sampling point
- All water is filtered by gate capture device
- There are no dust generating acitivites in this area
- There is no stormwater run on
- The diesel tank has an awning
- The ceramic coating are has an awning

TITLE: **Press Forge Industrial Stormwater Map**

| SIZE | DWG. NO. | REV |
|------|----------|-----|
| **A** | Area 4 | 6-22-16 |

SCALE 1":80'

North

Propane Tank for fueling

Scrap Metal Bins

Miscellaneous Storage

Flow

Hay and feed store

Industrial Area 5

Maintenance Building

Press Forge Engineering Building

Flow

Flow

Employee Parking

Sampling point

Industrial Avenue

Notes:
- There are no nearby bodies of water
- There are no erodible surfaces
- There are no dust generating acitivites
- The facility boundary is large rectangle
- There is no run on
- There have been no significant leaks/ spills
- Water flows to sump that drains below grade to street

| | | |
|---|---|---|
| B | | B |
| A | | A |
| 2 | | 1 |

TITLE: **Press Forge Industrial Stormwater Map**

| SIZE | DWG. NO. | REV |
|------|----------|-----|
| **A** | **Area 5** | 6-22-16 |
| | Scale 1":70' | SHEET 1 OF 1 |



# EXHIBIT B

Privileged and Confidential

Intended for
**Press Forge Co.**

Document type
**Engineering Report**

Date
**January, 2018**

# PRESS FORGE CO.
# INDUSTRIAL STORM
# WATER CALCULATIONS



RAMBØLL

# PRESS FORGE CO.
# INDUSTRIAL STORM WATER CALCULATIONS

| | |
|---|---|
| Revision | **0** |
| | |
| Date | **January 19, 2018** |
| Made by | **Elyse Rester** |
| Checked by | **Gaines Barry, P.E.** |
| Approved by | **Russell Parkman, P.E.** |
| Description | **Industrial Storm Water Calculations** |
| | |
| Ref | 1690000175 |

Ramboll
201 Summit View Drive
Suite 300
Brentwood, TN 37027
USA
T  +1 615 277 7570
F  +1 615 377 4976
www.ramboll.com

# CONTENTS

**1.** **INTRODUCTION** **1**
**2.** **ALTERNATIVE MASS DISCHARGE OBJECTIVES** **1**
**3.** **CALCULATIONS** **2**

# 1.   INTRODUCTION

Press Forge Company (Press Forge) operates a non-ferrous metal forge facility (sic code 3463) located at 7700 Jackson Street in Paramount, CA ("Facility").  The Facility has six industrial stormwater outfalls and corresponding drainage areas, as described in the Facility's Stormwater Pollution Prevention Plan (SWPPP).

Ramboll has been contracted by Press Forge to assist the site with industrial storm water compliance activities. Russell Parkman, P.E. of Ramboll is a Qualified Industrial Stormwater Practitioner (QISP) and assisted the facility with stormwater compliance in 2017 including developing a Level 2 Exceedance Response Action (ERA) Action Report.  The purpose of this report is to identify mass stormwater discharge amounts for certain pollutants to serve as alternatives to numeric discharge concentration objectives for those pollutants, as discussed below.

# 2.   ALTERNATIVE MASS DISCHARGE OBJECTIVES

Press Forge has provided Ramboll with the numeric stormwater discharge concentration objectives shown in Table 1.  Press Forge has requested that Ramboll convert these concentration-based numeric objectives into alternative mass discharge objectives for the facility based on the discharge flow from industrial areas of the Facility during the 85th percentile 24-hour storm event as the Facility existed on July 1, 2015.[1]

**Table 1. Numeric Objectives**

| Contaminant | Numeric Objective |
|---|---|
| Total Suspended Solids | 100 mg/L |
| Chemical Oxygen Demand (COD) | 120 mg/L |
| Oil and Grease | 15 mg/L |
| Nitrate + Nitrite Nitrogen | 0.68 mg/L |
| Zinc | 0.12 mg/L* |
| Aluminum | 0.75 mg/L |
| Iron | 1.0 mg/L |
| Chromium (hexavalent) | 0.05 mg/L |

NOTES: * This numeric objective is based on the dissolved concentration only.
mg/L – milligrams per liter

Ramboll has performed the alternative pollutant mass discharge objective loading calculations for each drainage area of the Facility utilizing the 85th percentile 24-hour design storm discharge volumes as presented below.  The pollutant mass loading calculations can be used to determine pollutant mass equivalency.

---

[1] The California General Permit for Storm Water Discharges Associated with Industrial Activities, NPDES No. CAS000001, effective July 1, 2015, identifies the design storm standard for treatment control BMPs to be the volume of industrial stormwater runoff produced from an "85th percentile 24-hour storm event, as determined from local, historical rainfall records." This report relies on the value from the 2004 County of Los Angeles Department of Public Works *Analysis of 85th Percentile 24-hour Rainfall Depth Analysis within the County of Los Angeles* for the area of the Facility.

# 3. CALCULATIONS

Table 2 below shows the stormwater volumes of the 85th percentile storm for each Drainage Area at Press Forge.

**Table 2: 85th Percentile Stormwater Volumes**

| Drainage Area | Area (s.f.) | 85th percentile storm (inches)[1] | Stormwater Runoff Coefficient | 85th percentile stormwater volume (gal) |
|---|---|---|---|---|
| 1 | 73,500 | 0.9 | 0.95 | 39,172 |
| 2 | 29,000 | 0.9 | 0.95 | 15,456 |
| 2A | 28,500 | 0.9 | 0.95 | 15,189 |
| 3 | 76,360 | 0.9 | 0.95 | 40,696 |
| 4 | 72,000 | 0.9 | 0.95 | 38,372 |
| 5 | 69,000 | 0.9 | 0.95 | 36,774 |

<u>Note 1:</u> The 85th percentile storm value for the Facility is derived from the 85th Percentile 24-hr Rainfall Isohyetal Map contained in the 2004 County of Los Angeles Department of Public Works *Analysis of 85th Percentile 24-hour Rainfall Depth Analysis within the County of Los Angeles.*
s.f. – square feet
gal – gallons

The Drainage Area areas were estimated from the information on the Industrial Stormwater Maps in the SWPPP, which shows maps for each Drainage Area. The maps indicate that each drainage area is 100% impervious, and we have assumed a stormwater runoff coefficient of 0.95,[2] as roof material is metal and highly impervious, and the asphaltic and concrete surfaces are likely highly compacted and impermeable from the industrial activities.

Where the maps identified an actual area value, the value identified was used in Table 2. Where the maps did not identify an area value, Ramboll calculated the area values from the scaled map provided. Ramboll has noted that each Drainage Area Map of the Industrial Stormwater Maps identifies that all stormwater within the Drainage Area Map flows to the outfall of the drainage area, and thus the entire area shown in each Drainage Area Map was used for the Drainage Area calculation of area.

The 85th percentile stormwater volumes (gal) are calculated by:

*Drainage area (s.f.) X 85th percentile storm (in) / 12 inches per foot X 0.95 runoff coefficient X 7.48 gal/cubic foot*

---

[2] The California State Water Resources Control Board Runoff Coefficient (C) Fact Sheet identifies an asphaltic surface to have a runoff coefficient between 0.70 to 0.95, a concrete surface to have a runoff coefficient between 0.80 to 0.95, and a roof surface to have a runoff coefficient between 0.75 to 0.95.

The pollutant mass loading for each drainage area and total based on the numeric objectives identified in Table 1 is summarized in Table 3.

**Table 3: Mass Loading Calculated Based on Numeric Objective.**

| Parameter | Numeric Objective | Pollutant Mass Loading (lbs.) based on Numeric Objective | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | DA-1 | DA-2 | DA-2A | DA-3 | DA-4 | DA-5 | Total |
| Total Suspended Solids | 100 mg/L | 32.66 | 12.89 | 12.66 | 33.93 | 31.99 | 30.66 | **154.78** |
| Chemical Oxygen Demand (COD) | 120 mg/L | 39.19 | 15.46 | 15.20 | 40.71 | 38.39 | 36.79 | **185.74** |
| Oil and Grease | 15 mg/L | 4.90 | 1.93 | 1.90 | 5.09 | 4.80 | 4.60 | **23.22** |
| Nitrate + Nitrite Nitrogen | 0.68 mg/L | 0.22 | 0.09 | 0.09 | 0.23 | 0.22 | 0.21 | **1.05** |
| Zinc (dissolved) | 0.12 mg/L | 0.04 | 0.02 | 0.02 | 0.04 | 0.04 | 0.04 | **0.19** |
| Aluminum | 0.75 mg/L | 0.24 | 0.10 | 0.09 | 0.25 | 0.24 | 0.23 | **1.16** |
| Iron | 1.0 mg/L | 0.33 | 0.13 | 0.13 | 0.34 | 0.32 | 0.31 | **1.55** |
| Chromium (hexavalent) | 0.05 mg/L | 0.02 | 0.01 | 0.006 | 0.02 | 0.02 | 0.015 | **0.08** |

mg/L – milligrams per liter
lbs. – pounds
DA – Drainage Area

Drainage Area Pollutant Mass Loading values (lbs.) are calculated per pollutant by:

*Drainage Area 85th percentile stormwater volume (gal) X 3.785 liters/gal X Numeric Objective (mg/L) / 454,000 mg/lb.*

Total Pollutant Mass Loading values (lbs.) are calculated per pollutant by summing the pollutant mass loading of each drainage area.